**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAROLYN PETERSON-DAILY**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF ASBURY PARK,** *et al.*, <br><br> Defendants. | Civil Action No. 23-21148 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion for Judgment on the Pleadings filed by Defendants the City of Asbury Park ("Asbury Park"), Municipal Court Judge Ronald J. Troppoli ("Judge Troppoli") (Successor of Judge Daniel J. DiBenedetto),[1] Municipal Court Administrator Joanne Pilliod ("Administrator Pilliod"), and Municipal Court Prosecutor James N. Butler, Jr. ("Prosecutor Butler") (collectively "Defendants"). ("Motion," ECF No. 24.) Defendants filed a Moving Brief in support of the Motion ("Moving Br.," ECF No. 24-1) and various exhibits, including a transcript from the deposition of Administrator Pilliod ("Dep.," ECF No. 24-2). Plaintiff Carolyn Peterson-Daily ("Plaintiff") filed an Opposition Brief. ("Opp'n Br.," ECF No. 27.) Defendants filed a Reply Brief. ("Reply Br.," ECF No. 28.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to

---

[1] The Court notes that Judge DiBenedetto presided over Plaintiff's Municipal Court case. He has since passed away. His successor is Defendant Judge Troppoli.

Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]  For the reasons set forth below, the Court will **GRANT** the Motion.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>[3]

Plaintiff filed her initial complaint in this Court on October 13, 2023, seeking damages arising from an alleged unlawful arrest in Asbury Park and from the Municipal Court's alleged unlawful act to stay Plaintiff's Municipal Court criminal case pending the outcome of her state civil matter.  (*See generally* "Compl.," ECF No. 1.)  Defendants filed an Answer to the Complaint.  ("Answer," ECF No. 8.)  A pretrial scheduling conference was held before the Magistrate Judge on May 2, 2024, and fact discovery commenced.  (ECF Nos. 13, 15.)  On October 11, 2024, Defendants filed the present Motion.  (ECF No. 24.)

Plaintiff alleges in her Complaint that on August 2, 2019 and into August 3, 2019, Plaintiff and her friends were walking home from a restaurant when five Asbury Park police officers "shoved [Plaintiff] to the ground," and "physically assaulted one of her friends."  (Compl. ¶¶ 7–14.)  Plaintiff alleges that she remained calm and did not verbally threaten or physically assault any of the officers.  (*Id.* ¶ 10.)  As Plaintiff's friend was being assaulted, and following the assault on herself, Plaintiff took out her cell phone to record the assault.  (*Id.* ¶ 19.)  The same officer that attacked Plaintiff a few minutes earlier then allegedly attacked her again, preventing her from taking a video of the incident.  (*Id.* ¶¶ 21, 22.)  After a brief altercation, Plaintiff was arrested, and she alleges that she was never informed why she was arrested despite asking numerous times.  (*Id.* ¶¶ 30, 31.)  Plaintiff was ultimately charged in Municipal Court with disorderly conduct and resisting arrest.  (*Id.* ¶ 33.)

---

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[3] For the purposes of considering this Motion, the Court accepts "as true all facts presented in the complaint and answer and draw[s] all inferences in favor of the non-moving party[.]"  *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019).

After her arrest, Plaintiff claims the Municipal Court judge was unresponsive in multiple respects: he rescheduled Plaintiff's initial court appearance six times between August 30, 2019 and May 8, 2020; he did not address Plaintiff's letter for discovery and request to change venue; and he did not address Plaintiff's motion to dismiss the charges.[4] (*Id.* ¶¶ 50–54.) When the Municipal Court finally had the initial conference,[5] Plaintiff alleges that the "prosecutor offered her a more lenient plea in exchange for a civil reservation, presumably in an effort not to have Plaintiff file a civil action against the City." (*Id.* ¶ 50.) Plaintiff did not accept the plea.

In the meantime, on October 30, 2019, Plaintiff filed a Notice of Tort Claim in the Superior Court of New Jersey. (*Id.* ¶ 38.) On July 20, 2021, Plaintiff filed a civil action in the Superior Court of New Jersey, Monmouth County, against Asbury Park and other entities. (*Id.* ¶ 40.) That action alleged eight causes of action: 1) a civil rights violation under state law; 2) supervisory liability under state law; 3) municipal liability under state law; 4) assault; 5) battery; 6) false arrest and imprisonment; 7) negligent hiring, retention, or supervision against Asbury Park; and 8) negligent hiring, retention, or supervision against other defendants. (*Id.* ¶ 41.)[6]

When the motion to dismiss before the Municipal Court was still not decided, in January 2023, Plaintiff submitted an Open Public Records Act ("OPRA") request for a list of all open cases charged in 2019. (*Id.* ¶ 57.) That request was later denied by the Municipal Court and Superior Court. (*Id.* ¶¶ 58, 59.) On April 19, 2023—then nearly four years after her arrest—Plaintiff sent a letter to the Monmouth County Prosecutor's Office and the New Jersey Attorney General's Office advising them of the Municipal Court's undue and deliberate delay in prosecuting Plaintiff's

---

[4] Plaintiff's motion to dismiss was filed on May 28, 2021. (Compl. ¶ 54.) As of the date of the Complaint, the motions for discovery, change of venue, and to dismiss remain pending. (*Id.* ¶ 62.)

[5] Neither the pleadings nor the parties' briefs disclose when the initial conference for the Municipal Court criminal matter was held.

[6] The state court civil docket number is L-002519-21. That action was settled and dismissed in June 2024. With Plaintiff's civil case settled, it is unclear why Plaintiff's criminal case continues to be stayed.

case.  (*Id.* ¶ 60.)  Plaintiff thereafter conducted a deposition of Administrator Pilliod in connection with her Superior Court case.  (*Id.* ¶ 70.)  In her deposition, Administrator Pilliod explained that it is the policy and practice of the Municipal Court to stay criminal municipal matters until the related civil case has completed.  (*Id.*)  Plaintiff relies on this admission to claim that her constitutional rights have been violated given the existence of a policy that impacts her right to a speedy trial. (*Id.* ¶ 82.)

In this federal action, Plaintiff asserts two causes of action: 1) a violation of 42 U.S.C. § 1983 and Article I, Paragraph 10 of the New Jersey Constitution on the basis that Defendants violated Plaintiff's Sixth and Fourteenth Amendment constitutional rights (Count One); and 2) a claim under 42 U.S.C. § 1983 for unlawful policy, custom, practice, inadequate training, and supervision (Count Two).  (*Id.* ¶¶ 84, 89.)

## II.    <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction over the claims in this matter under 28 U.S.C. § 1331.

## III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks and citation omitted).

In reviewing a motion for judgment on the pleadings, courts apply the same standard as when reviewing a motion to dismiss under Rule 12(b)(6).  *Turbe v. Gov't of V.I.*, 938 F.2d 427,

428 (3d Cir. 1991) (citations omitted); *Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).  Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).  As such, "[a] complaint should not be dismissed unless it appears beyond doubt that the facts alleged in the complaint, even if true, fail to support the claim."  *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft*, 556 U.S. at 675).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

IV.    **DISCUSSION**

A.    **DIRECT CLAIMS AGAINST INDIVIDUAL DEFENDANTS JUDGE TROPPOLI, ADMINISTRATOR PILLIOD, AND PROSECUTOR BUTLER (PART OF COUNT ONE)**

In the Motion, Judge Troppoli, Administrator Pilliod, and Prosecutor Butler argue that they are entitled to absolute immunity based on the allegations in the Complaint.  (Moving Br. at 9.) Plaintiff contends that they are not entitled to absolute immunity because Judge Troppoli acted outside the judicial process, there was no formal court order for Administrator Pilliod to act on, and Prosecutor Butler's actions were not associated with the judicial process.  (*See generally* Opp'n Br.)

1.    Judge Troppoli

Municipal court judges, like most judges, are immune from suit for money damages. *Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir. 2000).  This judicial immunity "is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages."  *Id.* at 440; *Stump v. Sparkman*, 435 U.S. 349, 365–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority. . . ."); *Gromek v. Maenza*, 614 F. App'x 42, 45 (3d Cir. 2015) (explaining that judicial immunity is not forfeited solely by allegation of malice or corruption of motive) (citing *Gallas v. Supreme Ct. of Penn.*, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court long has recognized that judges are immune from suit under [S]ection 1983 for monetary damages arising from their judicial acts.")).

Notably, immunity does not extend to actions not within the judge's official capacity, nor does it extend to actions taken in the absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).  Whether an act is judicial depends on the "nature" and "function" of the act, not the act itself.  *Mireles*, 502 U.S. at 13 (quoting *Stump*, 435 U.S. at 362).  Courts assess "whether the

6

act is a measure normally performed by a judge, . . . [and] evaluate the expectations of the parties, i.e. whether the parties dealt with the judge in her judicial capacity." *Figueroa v. Blackburn*, 39 F. Supp. 2d 479, 486 (D.N.J. 1999), *aff'd,* 208 F.3d 435 (3d Cir. 2000). And when determining whether the parties dealt with the judge in his or her judicial capacity, the court considers whether the acts at issue occurred in the courtroom or in some other location, whether the underlying controversy between the complainant and the judge arose out of a case pending before the court, and whether the judge was acting in his or her official capacity at the time of the controversy. *Id.* at 487.

Here, the Complaint asserts that Plaintiff's constitutional rights were violated because "the judge and prosecutor said to keep [the Municipal Court case] with the co-defendant and that it would not be heard until after the civil [Superior Court] case." (Compl. ¶ 71.) This amounted to an "internal and informal policy of staying criminal and/or quasi-criminal actions in municipal court while related civil actions were active." (*Id.* ¶ 82.)

Contrary to Plaintiff's position, the decision to stay a case is a part of a court's routine case management. That decision is well within the authority of a court to manage its docket. It is a measure performed by a judge in his or her official capacity.[7] *See Rodriguez v. Cain*, Civ. No. 23-1460, 2024 WL 4351457, at *4 (M.D. Pa. Sept. 30, 2024) (staying a criminal case while other issues were pending and noting that the "power to control the disposition of civil matters . . . is the power to stay proceedings when judicial economy or other interests so require"). Moreover, it is generally understood that courts have broad discretion to impose such stays. *See Barker v. Kane*, 149 F. Supp. 3d 521, 525 (M.D. Pa. 2016); *Landis v. North American Co.*, 299 U.S. 248, 254–56

---

[7] The parties fail to identify, nor can the Court find, any caselaw where a judge stayed a criminal case pending the outcome of a civil case. Nonetheless, the absence of caselaw does not defeat judicial immunity when the act was judicial in nature and not made in the absence of all jurisdiction.

(1936); *Power Surv., LLC v. Premier Util. Servs., LLC*, 124 F. Supp. 3d 338, 339 (D.N.J. 2015). Municipal courts are no different; their judges are likewise vested with the authority to stay their cases. *See Ramapough Mountain Indians, Inc. v. Twp. of Mahwah*, Civ. No. 18-09228, 2018 WL 10374641, at *2 (D.N.J. June 11, 2018).

While staying criminal cases pending disposition of related civil matters is potentially problematic on multiple levels, the municipal judge was acting squarely within his judicial capacity when he exercised this control over his docket. *See Gochin v. Haaz*, 724 F. App'x 155, 159 (3d Cir. 2018) (re-assigning judges is a judicial act as opposed to an administrative act); *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 415 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000) (finding judicial in nature the decision to grant an indefinite stay of Pennsylvania court proceedings pending resolution of other related issues, including a Hague Convention application and the taking of depositions); *Forrester v. White*, 484 U.S. 219, 227 (1988) (administrative acts include serving on a board with legislative and administrative powers); *Lynch v. Johnson*, 420 F.2d 818 (6th Cir. 1970) (judge not entitled to judicial immunity because his service on a board with only legislative and administrative powers did not constitute a judicial act).[8]

---

[8] *See also In Ex parte Virginia*, 100 U.S. 339, 348 (1880) (holding that a judge's preparation of an annual list of individuals eligible to serve on grand juries was not a judicial act covered by judicial immunity); *Morrison v. Lipscomb*, 877 F.2d 463, 465–66 (6th Cir. 1989) (finding that a chief judge's declaration of a moratorium on the issuance of writs of restitution was an administrative, not judicial, act, because the moratorium was a general order not connected to any particular litigation that did not alter the rights and liabilities of any parties and only instructed court personnel on how to process the petitions made to the court, and that immunity did not apply); *McMillan v. Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986) ("Hiring and firing of employees is typically an administrative task."); *Goodwin v. Circuit Court*, 729 F.2d 541, 549 (8th Cir. 1984) (county judge's decision to transfer hearing officer not an "official judicial act" but rather "administrative personnel decision"); *Lewis v. Blackburn*, 555 F. Supp. 713, 723 (W.D.N.C. 1983) (holding that a judge's appointment of magistrates is a ministerial act), *rev'd on other grounds*, 759 F.2d 1171 (4th Cir. 1985); *see also Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980) (holding that the Supreme Court of Virginia was acting in a legislative, not a judicial, capacity when it issued a Bar Code governing the actions of attorneys because "propounding the Code was not an act of adjudication but one of rulemaking"); *Richardson v. Koshiba*, 693 F.2d 911, 914 (9th Cir. 1982) (screening decisions by judicial selection panel comprised of judges involve "executive" acts).

Even if Judges Troppoli or DiBenedetto acted with malice or an intent to delay Plaintiff's case specifically—which from the face of the pleadings, they did not—they would still be entitled to judicial immunity.  *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly[.]"); *Stankowski v. Farley*, 251 F. App'x 743, 746 (3d Cir. 2007) (judge entitled to judicial immunity despite, like here, failing to address the plaintiff's motions); *see also Noriega v. United States*, Civ. No. 21-3589, 2022 WL 2161928, at *3 (D.N.J. June 15, 2022) (judge entitled to judicial immunity for issuing COVID-19 standing orders which allegedly violated the plaintiff's right to a speedy trial).

While the Court recognizes Judge Troppoli's potentially problematic policy, the Court, like in *Figueroa*, is "hard pressed to deviate from the well-established legal principles" that govern judicial immunity.  *See Figueroa*, 39 F. Supp. 2d at 494.  Judicial immunity "serves to prevent judicial officers from being chilled by the constant threat of civil rights lawsuits for making controversial decisions, and thus it must not be occasionally sacrificed whenever a judicial officer commits an erroneous or even vindictive act."  *Id.* at 495–95 (citing *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949) ("In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.")).

Accordingly, the Court finds that Judge Troppoli (as the successor to Judge DiBenedetto) is entitled to immunity from suit and the claims against him will be dismissed with prejudice. *Stump*, 435 U.S. at 365–57.

2.    <u>Administrator Pilliod</u>

Defendants argue that Administrator Pilliod is also entitled to absolute immunity because she carried out activities "integral" to the judicial process by following a judicial directive to stay Plaintiff's Municipal Court case.  (Moving Br. at 13, 14.)  Plaintiff argues that Administrator Pilliod is not entitled to absolute immunity because there was never a formal court order to stay her criminal proceedings.  (Opp'n Br. at 14–15.)  Instead, "[i]n retaliation [for Plaintiff's Notice of Tort Claim] Defendants put Plaintiff's criminal matter on proverbial ice and ceased all communication with [Plaintiff]."  (*Id.* at 15.)

Generally, court administrators are entitled to quasi-judicial immunity.  *See Gallas*, 211 F.3d at 772–73; *Addlespurger v. Corbett*, 461 F. App'x. 82, 85 (3d Cir. 2012).  A court administrator or deputy administrator who is charged with the duty of carrying out facially valid court orders enjoys quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order.  *Addlespurger*, 461 F. App'x. at 85.

Plaintiff relies heavily on the fact that there was never a formal or facially valid court order to stay her criminal case, and therefore, Administrator Pilliod is not entitled to immunity.  Although some authorities on the subject do explicitly reference formal court orders, *see Addlespurger*, 461 F. App'x at 85, there is no requirement that there be an official court order for a court administrator to act on behalf of the court in a "quasi-judicial" manner.  *See Talbert v. Evers*, Civ. No. 21-2505, 2021 WL 2291351, at *2 (E.D. Pa. June 4, 2021) (court administrator entitled to judicial immunity despite allegations that he mismanaged the court and failed to bring criminal defendants to trial in a timely manner); *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) ("[Defendant], while acting as Clerk of the United States District Court . . . in many of his actions performed quasi-judicial functions. . . .  Even if . . . [defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with

Judge Brewster, such acts would fall within [defendant's] quasi-judicial duties and are thus protected by absolute immunity."); *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) ("[W]hen functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate."); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989) ("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts . . . pursuant to the judge's instructions.").

Here, court administrators in Asbury Park are ultimately responsible for scheduling cases, (Dep. 19:14–16), and the decision to stay a case is "integral" to the judicial process, *Addlespurger*, 461 F. App'x at 85. Plaintiff even concedes that "Administrator Pilliod follow[ed] internal procedures of staying municipal matters until the related civil case [was] over" (Compl. ¶ 70), that the Judge and prosecutor "informed" Administrator Pilliod to stay the case (*id.* ¶ 72), and that "Administrator Pilliod has taken direction from the Judge and Prosecutor to specifically not schedule Plaintiff's municipal court case until Plaintiff's civil case is over" (*id.* ¶ 74). These allegations are fatal to Plaintiff's claim against Administrator Pilliod because they show that

Pilliod was undertaking a court function at the clear direction of the judge.[9]  Accordingly, she is entitled to immunity and the claims against her will be dismissed with prejudice.

### 3.    Prosecutor Butler

Prosecutors have their own immunity.  Under the doctrine of prosecutorial immunity, "prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors." *Newsome v. City of Newark*, Civ. No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014).  The Supreme Court has held that "a state prosecuting attorney who act[s] within the scope of his [or her] duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *see also Pierre v. Treasury Dep't*, Civ. No. 18-3443, 2018 WL 5801549, at *7–8 (D.N.J. Nov. 5, 2018).  This immunity applies to any action "intimately associated with the judicial phase of the criminal process" while a state prosecuting attorney is advocating for the State.  *Imbler*, 424 U.S. at 430–31; *see also Moore v. Middlesex Cnty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to withhold such evidence from the defense while functioning as an advocate for the State is protected by absolute immunity.").

In the Motion, Defendants argue that Prosecutor Butler is entitled to prosecutorial immunity because the decision to initiate a prosecution is at the core of a prosecutor's judicial role. (Moving Br. at 16.)  Plaintiff argues that the Court must consider the underlying reason why the

---

[9] Administrator Pilliod's deposition also does not support Plaintiff's argument.  Although Administrator Pilliod claimed that she was not monitoring Plaintiff's civil case, Administrator Pilliod testified that the judge and prosecutor instructed her to keep the criminal case with the co-defendant and not address it until the civil case concluded.  (Dep. 18:6–14.)  She also explained that it has always been done this way.  (Dep. 18:18–22.)  Administrator Pilliod's deposition appears to merely confirm she was following instructions.

prosecutor failed to prosecute Plaintiff's case—that is, Plaintiff's filing of a Notice of Tort claim and civil action in the Superior Court.  (Opp'n Br. at 19–20.)

For the reasons that follow, the Court finds that Prosecutor Butler is also entitled to prosecutorial immunity.  First, in deferring the prosecution of Plaintiff's criminal case, Prosecutor Butler was acting within the judicial phase of the criminal process.  *See Slater v. Furfair*, Civ. No. 22-308, 2023 WL 4487765, at *3 (D.N.J. July 12, 2023) ("[S]tate prosecuting attorney who acted within the scope of [her] duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983) (second alteration in original).  Courts have specifically found that a prosecutor has discretion to decide whether and when to prosecute a case and that the exercise of that discretion is entitled to immunity.[10]  *See id.* ("This immunity includes claims against a prosecutor for purported speedy trial violations." (citing *Roman v. Tyner*, Civ. No. 20-20344, 2021 WL 158934, at *2 (D.N.J. Apr. 23, 2021))); *Panayotides*, 35 F. Supp. 2d at 416 ("Plaintiff's claims against [the prosecutor] revolve around the decision not to prosecute for which [the prosecutor] enjoys immunity."); *Davis v. Rendell*, 659 F.2d 374, 378 (3d Cir. 1981) (immunity extends to the decision whether or not to prosecute); *Nelson v. Commonwealth of Pennsylvania*, Civ. No. 97-6548, 1997 WL 793060, *2 (E.D. Pa. Dec. 9, 1997) ("[P]rosecutor absolutely immune from liability under § 1983 for acts within the scope of his duties in initiating and pursuing a criminal action.").

Second, as pled, Prosecutor Butler appears to have been complying with the Municipal Court's stay.  It is difficult to envision how Prosecutor Butler could prosecute a case that has been stayed by the court.

---

[10] However, as noted previously, this Court questions why Plaintiff's criminal matter cannot proceed now that her civil case has concluded.  This assumes, of course, that this suit in federal court is not impacting the Municipal Court's decision to stay Plaintiff's criminal matter.

Accordingly, the Court finds that Prosecutor Butler is entitled to prosecutorial immunity and the claims against him will be dismissed with prejudice.

## B.    DIRECT CLAIMS AGAINST ASBURY PARK (PART OF COUNT ONE)

Plaintiff's first claim also alleges that Asbury Park, as a municipal entity, "deprived Plaintiff of her rights under the Sixth and Fourteenth Amendments to the United States Constitution by implementing, upholding, and following an internal policy to informally stay criminal and quasi-criminal municipal cases while related civil cases are active and/or pending." (Compl. ¶¶ 84.) Plaintiff further alleges that "Defendant Asbury Park still has not even attempted to schedule the criminal matter." (*Id.* ¶ 78.)

A municipality may be liable under § 1983 when the alleged constitutional injury was caused by a policy, practice or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Supreme Court has made clear, however, that if the municipal body or official in question had no legal authority to decree policy or to otherwise act on the subject matter, the municipality itself cannot be liable. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The New Jersey Appellate Division has found that in New Jersey, a municipality possesses no legal control over the judicial function of its municipal court and that it cannot be liable for that court's alleged violations of the constitutional rights of parties appearing before it. *K.D. v. Bozarth*, 713 A.2d 546, 551 (N.J. App. Div. 1998). Accordingly, Plaintiff's claims against Asbury Park will be dismissed with prejudice.[11]

---

[11] Count One also includes a claim for conspiracy under 42 U.S.C. § 1985. (*See* Compl. ¶ 85 ("The Defendants conspired among themselves . . . to maintain a policy that deprived Plaintiff of her Sixth Amendment right to a speedy trial and her Fourteenth Amendment right to due process of law.").) Having concluded that there is no constitutional violation, there can be no conspiracy.

### C.    *MONELL* LIABILITY (COUNT TWO)

Count Two of the Complaint asserts a claim under 42 U.S.C. § 1983 for an unlawful policy, custom, or practice against Asbury Park, the Asbury Park Municipal Court, Judge Troppoli, and Prosecutor Butler.  The direct claims against Judge Troppoli, Administrator Pilliod, and Prosecutor Butler have been dismissed.  As a matter of law, where there is no underlying constitutional violation, there can be no corresponding § 1983 claim against the municipality under *Monell*. *Brenes v. City of Asbury Park*, Civ. No. 19-22204, 2020 WL 6268693, at *8 (D.N.J. Oct. 26, 2020); *see Queensbury v. Petrone*, Civ. No. 14-7230, 2015 WL 4715323, at *4 (D.N.J. Aug. 7, 2015) ("There are no claims remaining in this matter that are based on a constitutional violation."). Therefore, Plaintiff's claim for *Monell* liability against Asbury Park must be dismissed.

### V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** the Motion.  The claims in the Complaint will be dismissed with prejudice.[12]  An accompanying Order will follow.


Date: July 22, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[12] With the dismissal of Plaintiff's claims in this matter and in the Superior Court civil case, the Court joins Plaintiff's hope that her Municipal Court criminal case will now resume.